IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CONNELL E. ELMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15CV759 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Connell E. Elmore, seeks review of a final decision of the Commissioner of Social Security denying his claim for Title II disability insurance benefits. The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 5, 8, 10.) For the reasons stated herein, the Court recommends that Plaintiff's motion be denied, Defendant's motion be granted and the final decision of the Commissioner be upheld.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on October 9, 2013, alleging a disability onset date of June 3, 2013. (Tr. 202-04.)[1] The application was denied initially and again upon reconsideration. (Tr. 114, 133.) A hearing was then held before an Administrative Law Judge ("ALJ") at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (Tr. 38-81.) On May 29, 2015, the ALJ determined that Plaintiff was

---

[1] Unless otherwise noted, transcript citations refer to the administrative record in this case which was filed with Defendant's Answer. (Docket Entry 5.)

not disabled under the Act.[2] (Tr. 14-31.) On July 23, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Tr. 1-5.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. § 404.1520; *see also Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 19.) The

---

[2] Plaintiff also applied for benefits through the Department of Veteran Affairs ("VA"). (Tr. 297-314.) Plaintiff was accorded a 100% VA disability rating. (*Id.*)

2

ALJ next found that Plaintiff suffered from the following severe impairments:

> coronary artery disease (CAD)/congestive heart failure (CHF), status/post multiple stents and recent coronary artery bygraft (CABG) surgery; diabetes mellitus; hypertension; obstructive sleep apnea; degenerative disc disease; left sided atelectasis; migraines; obesity; history of alcohol abuse; major depressive disorder; anxiety disorder/post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

(*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one listed in Appendix 1. (*Id.*) Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (Tr. 23.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform sedentary work. (*Id.*) Specifically, the ALJ further limited Plaintiff to performing

> occasional climbing of ramps and stairs, but no climbing ladders, ropes or scaffolds. [Plaintiff] is limited to occasional balancing, stooping, kneeling and/or crouching, but no crawling. He must avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. He must avoid concentrated exposure to temperature extremes of heat/cold, to humidity, as well as to pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation and the like. He is capable of understanding and performing simple, routine, repetitive tasks, and maintaining concentration, persistence, and pace to remain on task for periods of 2 hours at a time throughout an 8-hour workday in order to perform such task, in a low stress work setting, which is further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional changes in the work setting. He must not work with the public as a component of the job, such as sales or negotiation, though incidental or causal contact is not precluded as it might arise. He requires a sit/stand option that would allow him to change positions at will, while remaining on task.

(Tr. 23-24.) At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 29.) At step five, the ALJ determined that, given Plaintiff's age, education, work experience, and RFC, there were other jobs that Plaintiff could perform, such

3

as document preparer, ticket taker, and addresser. (Tr. 30.) Consequently, the ALJ determined that Plaintiff was not disabled through the decision date. (Tr. 31.)

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that he was not disabled for purposes of the Act. (Docket Entry 9). Plaintiff raises two arguments. First, Plaintiff contends that "[t]he ALJ improperly evaluated the disability determination of the VA." (*Id.* at 5-9.) Second, Plaintiff argues that "[t]he ALJ inadequately evaluated the medical opinion of Plaintiff's treating cardiologist." (*Id.* at 9-11.)

### A. The ALJ Did Not Erroneously Give Less Weight to the VA Disability Rating

Plaintiff contends that the ALJ erred in evaluating a prior disability determination by the VA. (*Id.* at 5-9.) The VA issued Plaintiff a VA disability rating decision which granted him a 70% service-connected rating for "major depressive disorder with primary insomnia" effective January 15, 2013, and a 60% service-connected rating for "coronary artery disease with myocardial infarction and s/p stent . . . associated with hypertension with history of renal insufficiency" effective May 1, 2013.[3] (Tr. 300, 310.) The ALJ attributed the VA determination "little weight." (Tr. 28.) Evaluating the strength of Plaintiff's argument requires an understanding of *Bird v. Commissioner*, 699 F.3d 337, 343 (4th Cir. 2012) and SSR 06–03p. disability rating.

In *Bird*, the Fourth Circuit addressed "the precise weight that the SSA must afford to

---

[3] The VA found that Plaintiff suffered from a number of other impairments. However, Plaintiff's brief only addresses, in detail, Plaintiff's serious heart conditions and major depressive disorder. (Tr. 300-05, 310-14.)

4

a VA disability rating." *Bird*, 699 F.3d at 343. In addressing this question, the Fourth Circuit noted that "the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* It reasoned further that "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (internal quotations and citations omitted).

Ultimately, the Fourth Circuit concluded that "[b]ecause the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Thus, "in making a disability determination, the SSA must give substantial weight to a VA disability rating." *Id.* The Fourth Circuit further reasoned that

> because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

*Id.* Consequently, the Fourth Circuit held in *Bird* that the ALJ erred in finding the plaintiff's VA disability rating irrelevant based solely on the fact that the VA decision became effective after Plaintiff's date last insured ("DLI"). *See id.* at 346 ("[B]ecause the ALJ made two errors of law in conducting his analysis of the evidence concerning the issue whether the plaintiff was disabled before his DLI, we vacate the district court's judgment and remand the case to the district court for further remand to the ALJ for proceedings consistent with the principles

5

of law expressed in this opinion.").

The Social Security Rulings also speak to whether and when an ALJ is obligated to consider disability determinations from other agencies. According to SSR 06–03p:

> Our regulations . . . make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner . . . . However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies . . . . Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

SSR 06–03p, *Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939, at *6 (2006); 20 C.F.R. § 404.1512(b)(v). Here, in according "little weight" to this determination, the ALJ stated:

> Little weight is given to the VA service-connected disability rating of 100% and permanent disability findings. The undersigned is mindful of the United States Court of Appeals for the Fourth Circuit's recent holding that a VA disability determination must be accorded "substantial weight" in Social Security disability proceedings. However, in so holding, the Court also held that "an Administrative Law Judge may give less weight to a VA disability rating when the record before the [ALJ] clearly demonstrates that such a deviation is appropriate." In the case at bar, the undersigned finds such a deviation is appropriate because the record does not support disability beyond a 12-month period. Furthermore, the rules for disability regarding the VA claim were different from our agency's rules, and the VA does not employ any vocational input, like a vocational expert, to determine what impact limitations might have on an individual's functional capacity. While insomnia that was increased effective January 2013 from 50% to 70%, this rating, which is based on certain criteria spelled out in 7D, does not undertake a "function by function" assessment with specific evidentiary discussion, as done herein by the undersigned. In short, while VA ratings serve a purpose for the VA, they cannot govern the analysis of a Social Security disability claim. Otherwise, Congress and/or the Agency would have linked the VA ratings directly to disability.

6

(Tr. 28-29 (internal citations omitted)).

The undersigned agrees with Defendant that this is not a case where the ALJ failed to explain the consideration given to the VA rating. (Docket Entry 11 at 7.) Moreover, the undersigned agrees with Defendant that the ALJ considered Plaintiff's VA rating in light of the entire record and gave proper reasons to afford it less weight. (*Id.*)

As an initial matter, the ALJ acknowledged that *Bird* requires the ALJ to clearly demonstrate that giving the VA disability rating less weight is appropriate. The ALJ gave the VA rating less weight because "the record does not support disability beyond a 12-month period." (Tr. 29.) The ALJ also reasoned that, with respect to the highest percentage rating allocated to Plaintiff's major depressive disorder, there was no specific evidentiary discussion of how the VA determined that Plaintiff's major depressive disorder yielded a 70% rating. (*Id.*) The court finds that these reasons are sufficient to allow the ALJ to accord the VA disability rating little weight. *Tremble v. Colvin*, No. 2:15-CV-00001-D, 2016 WL 484214, at *9 (E.D.N.C. Jan. 20, 2016), *report and recommendation adopted*, No. 2:15-CV-1-D, 2016 WL 528057 (E.D.N.C. Feb. 8, 2016) (finding that the ALJ adequately explained why the VA rating warranted less than substantial weight and acknowledging that the record did "not contain the VA's decision explaining the rationale behind [the plaintiff's] award of benefits"); *Mills v. Colvin*, No. 5:13-CV-432-FL, 2014 WL 4055818, at *3 (E.D.N.C. Aug. 14, 2014) (affirming the ALJ's decision to not give the VA disability rating substantial weight because the ALJ explained that it conflicted with the ALJ's assessment of the medical evidence in the record under SSA standards for evaluating disability and gave specific examples).

7

Additionally, the ALJ's assessment of the VA disability rating is supported by substantial evidence. The ALJ's reasoning that Plaintiff was not disabled for a 12 month period is consistent with the longitudinal medical evidence. An ALJ must evaluate all of the medical opinions in the record in light of: the examining relationship, the treatment relationship, the nature and extent of the treatment relationship, the degree to which the opinion relies on relevant evidence, the consistency of the opinion with the record as a whole, the specialization of the source of the opinion, and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). A medical source's opinion must be both well-supported by medical signs and laboratory findings as well as consistent with other substantial evidence in the case record. *Id.* "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Id.* at 589 (citation omitted); *accord Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

Here, the ALJ accurately observed that the objective medical evidence revealed that, in November 2013, Plaintiff reported that his blood pressure was controlled. (Tr. 26, Tr. 711-712.) In December 2013, an EKG showed an ejection fraction[4] at 59%, "[m]oderate

---

[4] "The ejection fraction is an important measurement of heart function. A normal ejection fraction may be between fifty-five and seventy, while a measurement below forty may be evidence of heart failure or cardiomyopathy." *Jansen v. Lincoln Fin. Grp.*, 135 F. Supp. 3d 1036, 1040 n.3 (D.S.D. 2015).

8

concentric hypertrophy, [n]ormal systolic global function, . . . Doppler evidence of [g]rade 1 diastolic dysfunction, [l]eft atrial cavity slightly dilated, [m]ild mitral regurgitation, [m]ild tricuspid regurgitation" and no pulmonary hypertension. (Tr. 2447.) Subsequently, Plaintiff was hospitalized in February 2014, for two nights because of chest pain.[5] (Tr. 26, 838.) A cardiolite study revealed ejection fraction at 47% as well as mild hypokinesis but no ischemia. (Tr. 26, 856-57.) In January 2015, Plaintiff stopped smoking and drinking and reported that he had no angina. (Tr. 26, 2444.) In addition, his hypertension was described as benign. (Tr. 26, 2445.) In April 2015, Plaintiff had left sided atelectasis but a chest x-ray showed no congestive heart failure. (Tr. 2408.) The ALJ noted that "the rest of the exam was unremarkable . . . his blood pressure was . . . still described as benign . . . ." (Tr. 26, 2408, 2441.) Plaintiff's breathing was normal and he had normal heart sounds. (Tr. 26, 2442.) Furthermore, the state agency disability determination consultants, Steph Levin, MD., Dr. Albertson and Dr. Klein, all determined that Plaintiff was not disabled and could perform light, unskilled work. (Tr. 112-13, 131-32.) The ALJ gave these consultants partial weight because, while their findings were consistent with the medical and psychiatric evidence through the dates of their evaluation, they were not able to take into account later evidence including Plaintiff's coronary artery bygraft surgery and his hearing testimony. (Tr. 29, 1599.) Nevertheless, "after carefully considering the entire record, including [Plaintiff's] testimony," the ALJ properly found that Plaintiff's "impairments are not as severe or limiting as alleged."

---

[5] The Court notes that Plaintiff had three heart attacks between June 2013 and December 2014. (Tr. 485, 1491, 2318.)

9

(Tr. 29.)

With respect to Plaintiff's major depressive disorder, the ALJ noted that Plaintiff attempted to commit suicide by overdosing on medication after finding out that one of his children was not his biological child. (Tr. 27, 864.) Between June and July of 2013, Plaintiff was in and out of the hospital due to having a depressed mood and suicidal thoughts. (Tr. 459, 864, 870.) During each stay, Plaintiff had no behavioral problems and he was calm, neutral, and denied any suicidal thoughts upon discharge. (Tr. 459, 867, 874-875.) From November 2013 through January 2014, Plaintiff was admitted to an intensive outpatient program ("IOP") because of his depression and alcohol abuse. (Tr. 711.) He did not have "any suicidal ideations throughout the [IOP]," nor did he present "any self-injurious behaviors." (Tr. 27, 712.) On the day of discharge, Plaintiff's mood was "euthymic with a full range of affect . . . ." (Tr. 712.) In April 2014, Dr. Yamamoto, Plaintiff's treating psychologist, found that Plaintiff was no longer a suicide risk. (Tr. 1191.) In October 2014, Dr. Yamamoto stated that although Plaintiff was depressed, "[h]e was oriented to time, place, persons, and circumstances." (Tr. 1520.) His speech was normal and his thought process was coherent and logical. (*Id.*) Notably, in March 2015, Plaintiff reported that he "had[] no issue." (Tr. 1637.) In April 2015, although Plaintiff was depressed, "[h]e was oriented to time, place, persons, and circumstances." (Tr. 2358.) His mood was euthymic and his affect was calm and broad. (*Id.*) Given this evidence, the ALJ properly considered the VA rating, and consistent with *Bird* and governing regulations, sufficiently articulated proper reasons for giving it less weight.

10

## B. The ALJ Adequately Evaluated the Medical Opinion of Plaintiff's Treating Cardiologist

Plaintiff also contends that the ALJ inadequately evaluated Dr. Manesh Thomas' medical opinion. Dr. Thomas' opinion was based on the New York Heart Association ("NYHA") ratings for cardiac conditions. (Tr. 2346-47; Docket Entry 9 at 9-10.) Dr. Thomas' opinion is in the form of a checklist giving one of four options rating the status of Plaintiff's heart failure. (Tr. 2345-46.) The checklist options are labeled as different classes to indicate the severity of the patient's heart condition. (Tr. 2346.) Dr. Thomas check marked Class III for "patients with marked limitation of activity; they are comfortable only at rest." (*Id.*) According to Plaintiff, "Class III denotes cardiac disease resulting in 'marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain.'" (Docket Entry 9 at 9) (internal citation omitted). Plaintiff argues that "[o]nly being comfortable at rest and being unable to engage in less than ordinary activities without significant symptoms" indicates functional loss severe enough to subject Plaintiff to more limitations than working 8 hours per day, 5 days per week in a sedentary position. (*Id.* at 10.)

The ALJ accurately reasoned that Dr. Thomas' opinion "does not directly correlate[] to specific loss of function, per se." (Tr. 29.) "[I]t is plaintiff's burden to put forth . . . not merely evidence of his impairments but his functional limitations resulting therefrom." *Whitaker v. Colvin*, No. 4:13-CV-00256-BO, 2015 WL 306984, at *6 (E.D.N.C. Jan. 21, 2015). Dr. Thomas' opinion fails to denote what functional limitations are caused by Plaintiff's heart

11

condition. *Watkins v. Astrue*, No. 1:09CV741, 2011 WL 2791267, at *5 (M.D.N.C. July 14, 2011) (finding the ALJ's interpretation of a physician's opinion reasonable and consistent with the Social Security Act because the physician did not "ascribe any specific limitations on Plaintiff's ability to perform work-related functions, and instead stated that Plaintiff had suffered 'some' difficulty as a result of fatigue") (internal citation omitted); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that the existence of a diagnosis alone without "a showing of related functional loss" is insufficient to prove disability).

Furthermore, "form reports, in which a physician's only obligation is to check a box or fill in a blank, are entitled to little weight in the adjudicative process." *Green v. Colvin*, No. 4:14-CV-212-FL, 2016 WL 487535, at *5 (E.D.N.C. Jan. 19, 2016), *report and recommendation adopted*, No. 4:14-CV-212-FL, 2016 WL 497890 (E.D.N.C. Feb. 8, 2016) (internal citations and quotations omitted). "The better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527. The record only contains Dr. Thomas' checklist. Dr. Thomas did not provide an explanation for his findings. *Acosta v. Colvin*, No. 1:14CV1056, 2016 WL 1229084, at *5 (M.D.N.C. Mar. 28, 2016) (noting that while the doctor's opinion was inconsistent with the medical evidence, it "took the form of a checkbox questionnaire without explanation or supporting evidence"); *Foushee v. Colvin*, No. 1:13CV815, 2014 WL 6831766, at *3 (M.D.N.C. Dec. 3, 2014) (finding that a doctor that checked yes on a form for the question whether the patient would sometimes need to take unscheduled breaks was too vague to constitute an opinion of the plaintiff's limitations). Therefore, the court concludes that the ALJ's interpretation of Dr. Thomas' opinion is

12

reasonable and consistent with the Social Security Act and regulations.

Plaintiff also contends that the ALJ failed to address other parts of Dr. Thomas' opinion. Specifically, Dr. Thomas indicated on a checklist that Plaintiff suffers from a number of other impairments. (Tr. 2345.) Similar to the NYHA checklist above, these findings do not indicate how Plaintiff would be subjected to more functional limitations. While the ALJ did not discuss the other parts of Dr. Thomas' opinion, "an ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record." *Long v. Colvin*, No. 1:13CV0659, 2015 WL 1312919, at *8 (M.D.N.C. Mar. 24, 2015), *report and recommendation adopted*, No. 1:13CV659, 2015 WL 1646985 (M.D.N.C. Apr. 14, 2015) (citation omitted). "'[T]he regulations mandate only that the ALJ give 'good reasons' in the decision for the weight ultimately allocated to medical source opinions.'" *Stanley v. Colvin*, No. 1:14CV986, 2016 WL 93853, at *4 (M.D.N.C. Jan. 7, 2016), *report and recommendation adopted*, No. 1:14CV986, 2016 WL 447493 (M.D.N.C. Feb. 4, 2016) (citing *Tucker v. Astrue*, 897 F. Supp. 2d 448, 468 (S.D.W.Va. 2012)). The ALJ's decision to not discuss Dr. Thomas' findings, which do not denote that Plaintiff has any other functional limitations, does not render the ALJ's decision erroneous. *Moore ex rel. S.N.M. v. Colvin*, No. 1:12CV328, 2014 WL 2881620, at *2 (M.D.N.C. June 25, 2014) ("The court finds no error in the ALJ's alleged failure to discuss the three pieces of evidence singled out by Plaintiff, nor does such purported failure render the ALJ's findings . . . unsupported by substantial evidence."); *Malloy v. Colvin*, No. 1:10CV420, 2013 WL 2147681, at *6 (M.D.N.C. May 16, 2013) ("It is well established that an ALJ need not provide a written evaluation for each

13

document in the record."); *Pike v. Astrue*, No. 1:09CV448, 2011 WL 9300, at *5 (M.D.N.C. Jan. 3, 2011) ("The ALJ, . . . is not required to discuss every finding in every medical report.")

Next, Plaintiff contends that the ALJ failed to consider and weigh Dr. Thomas' finding that Plaintiff could not perform at a workload of five METs.[6] (Docket Entry 9 at 10.) Plaintiff further contends that this opinion corroborates the VA's findings, and uses the same terms as the Social Security Administration for assessing cardiac disability. (*Id.*) However, this opinion is also a part of the same checklist addressed above. (Tr. 2345.) Dr. Thomas does not make a determination regarding how the findings result in any functional loss. Furthermore, the opinion is vague at best. The form allows a physician to check an option if the patient is unable

> to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to: a) dyspnea, fatigue, palpitations, or chest discomfort; b) three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopic with at least 6 premature ventricular contractions per minute; c) decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise due to left ventricular dysfunction despite an increase in workload; or d) Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

(*Id.*) Dr. Thomas does not explain which group of impairments prevent Plaintiff from performing at a workload equivalent to 5 METs or less. Moreover, the results of a cardiolite

---

[6] "METS stands for metabolic equivalents. Physicians utilize METS to measure one's functional capacity." *Humphries v. Colvin*, No. 3:15CV188 (MHL), 2015 WL 9942619, at *5 (E.D. Va. Dec. 31, 2015), *report and recommendation adopted*, No. 3:15CV188 (MHL), 2016 WL 356086 (E.D. Va. Jan. 28, 2016) (internal citation and quotation omitted). While METs is used to measure functional capacity, Dr. Thomas does not indicate the specific functions limited by Plaintiff's inability to perform at a workload of five METs.

test, which is an exercise based stress test, conducted on February 25, 2014, were negative. This test showed that Plaintiff experienced no symptoms during the test, had a normal sinus rhythm, no complaints during or after infusion or during recovery, and no occult progression of ischemic heart disease. (Tr. 971.)

Plaintiff incorrectly states that the ALJ did not weigh Dr. Thomas' opinion. The ALJ expressly assigned Dr. Thomas' opinion "partial weight, as it does not directly correlate to specific loss of function, per se." (Tr. 29.) Without any further explanation by Dr. Thomas, the ALJ is not obligated to address every issue checked by Dr. Thomas on the checklist form. Therefore, the ALJ's decision not to address every portion of Dr. Thomas' opinion was proper.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing Commissioner (Docket Entry 8) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be **GRANTED** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

June 20, 2016